COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

TYVON LYNCURTIS SMITH

v.      Record No. 0099-18-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT P. FRANK
MAY 14, 2019

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Edward W. Hanson, Jr., Judge Designate

Paul C. Galanides for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Tyvon L. Smith, appellant, was convicted in a jury trial of two counts of suborning

perjury in violation of Code § 18.2-436, "solicitation of arson" in violation of Code § 18.2-77,[1]

and participating in a criminal street gang predicate act of violence in violation of Code

§ 18.2-46.2. On appeal, he challenges the sufficiency of the evidence to sustain his convictions.

BACKGROUND

We review the evidence in the light most favorable to the Commonwealth, the prevailing

party below. Riner v. Commonwealth, 268 Va. 296, 300 (2004).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although the trial court's order referred to the offense as "solicitation of arson" in
violation of Code § 18.2-77, appellant's indictment charged that he "did unlawfully and
feloniously aid, counsel or procure another to maliciously burn . . . ," which tracked the language
of Code § 18.2-77(A)(ii). Appellant did not object to the use of the word "solicitation" at trial.

On November 18, 2013, Karen Hunter and Tameshia Dennis were awakened in the middle of the night by the sound of multiple gunshots. The women found bullet holes inside their residence the next morning.

In December 2013, Accomack County Investigator Patrick Coulter charged appellant with shooting into an occupied dwelling (Hunter's house), discharging a firearm from a motor vehicle, and felony possession of a firearm. Appellant pleaded not guilty to the charges, and a jury trial was held in the Circuit Court of Accomack County on July 22, 2014. Two of the Commonwealth's witnesses, Raquelle Johnson and Tyneisha Purnell, had implicated appellant in the shootings before the trial, but both women testified that they did not recall the incident. Johnson testified that she did not remember the questions and answers in the written statement she had given to a law enforcement officer and that the officer had forced her to sign the statement. Purnell testified that she did not recall meeting with the officers. She also denied that anyone had threatened her or persuaded her not to testify at the trial. At the conclusion of the Commonwealth's case, the trial court sustained appellant's motion to strike, thus dismissing the three indictments.

Subsequently, appellant was indicted for a number of felonies, including suborning perjury (arising out of the July 22, 2014 trial); aiding, counseling, or procuring another to commit arson; and participating in a criminal street gang predicate act of violence. At the trial on October 31, 2016, Investigator Coulter testified that prior to appellant's 2014 trial, he met with the prosecutor, Johnson, and Purnell. He stated that, after discussions with those two witnesses, he was not concerned that their expected testimony against appellant would be adverse to the Commonwealth's case. Coulter further explained that Johnson, Purnell, and other witnesses for the Commonwealth all had given consistent statements about appellant's

involvement in the alleged shooting into Hunter's house. The transcript of the 2014 trial, showing Johnson's and Purnell's testimony, was admitted as an exhibit at the 2016 trial.

Also introduced into evidence at the 2016 trial were letters appellant had written while being held in jail prior to his 2014 trial. The letters were intercepted by law enforcement and did not reach the intended recipients. The parties stipulated that appellant had authored the letters.

In a letter dated May 19, 2014, appellant described a plan, using the sport of football as a metaphor, to encourage two unidentified individuals to stop cooperating with the prosecution and to provide him with favorable testimony on the day of his 2014 criminal trial. The letter also directed the recipient to create alibis for those two witnesses, who appeared to have spoken to law enforcement concerning appellant's and his co-defendant's involvement in the alleged shooting.

In a letter dated June 3, 2014, appellant described his "game plan" in greater detail. In that letter, appellant directed the recipient to tell certain witnesses to "play it kool" with the prosecution until "the game starts," when those witnesses would then "put our team colors on." The letter also contained suggestions for how the two witnesses should disavow their prior written statements to law enforcement.

Finally, in the May 27, 2014 letter, appellant attempted to persuade the intended recipient to set fire to the residence of two individuals, identified only as "rummy and dummy."

> Get some gas shake it on half of the house front and back. Then
> Tanya Bundick that bitch. Soon as you see the fire let them 32 go.
> Make sure you get the gas in a milk jug that way that will burn too.
> You feel me? You take care of that.

Wesley Diggs, testifying as a cryptology expert from the Virginia Department of Corrections, concluded that appellant was "instructing the recipient to get gas and set fire to a

house, using the phrase Tanya Bundick[2] as a reference to set fire." The "32" either described the number of rounds to be fired or the caliber of the weapon.

The Commonwealth established that appellant was a gang member from the testimony of Accomack County Sheriff's Deputy Levi Higgins and Sergeant Elliot Anderson, a gang activities expert for the Virginia State Police. Higgins testified that he heard a bird call ("so-woop") from one of the jail's cells, which he later determined had been occupied solely by appellant, while in the jail's recreation yard on August 26, 2014. Anderson explained that certain gang members use a bird call that sounds like "so-woop." Anderson also referenced written gang membership materials that were recovered during a search in 2013, which appellant stipulated that he wrote. Anderson identified various gang symbols and signs found within the documents and concluded that the evidence was consistent with appellant being a gang member.

The jury returned a guilty verdict on four of the charges. This appeal follows.

ANALYSIS

1. Perjury

Appellant challenges the sufficiency of the evidence to sustain his two convictions for suborning perjury. He argues that, despite contradictions between their statements to Investigator Coulter and their testimony at appellant's 2014 trial, no evidence proved that either Johnson or Purnell committed perjury, nor was there any evidence they received the letters written by appellant.

When an appellant challenges the sufficiency of the evidence supporting a conviction, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. When

---

[2] Tanya Bundick had been charged and convicted of multiple arsons on the Eastern Shore.

reviewing the sufficiency of evidence, this Court "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kin Yiu Cheung v. Commonwealth, 63 Va. App. 1, 8 (2014) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Id. (quoting Conrad v. Commonwealth, 31 Va. App. 113, 123 (1999) (*en banc*)). "This deferential standard of review 'applies not only to the historical facts themselves, but [also to] the inferences from those facts.'" Bennett v. Commonwealth, 69 Va. App. 475, 492 (2018) (quoting Crowder, 41 Va. App. at 663 n.2).

Code § 18.2-436 states:

> If any person procure or induce another to commit perjury or to give false testimony under oath in violation of any provision of this article, he shall be punished as prescribed in § 18.2-434.
>
> In any prosecution under this section, it shall be sufficient to prove that the person alleged to have given false testimony shall have been procured, induced, counselled or advised to give such testimony by the party charged.

By using the words "procure or induce," Code § 18.2-436 requires a causal connection between the defendant's actions and the recipient's perjury. The Supreme Court of Virginia has held that the "definition of 'procure' includes 'to bring about by scheming and plotting,' and 'to prevail upon to do something indicated: INDUCE.'" Dietz v. Commonwealth, 294 Va. 123, 133 (2017) (quoting Webster's Third New International Dictionary 1809 (1993)). The definition of "induce" includes "to move and lead (as by persuasion or influence) . . . prevail upon . . . to inspire, call forth, or bring about influence or stimulation." Webster's, supra, at 1154.

The dispositive issue before us is whether appellant procured or induced the allegedly false testimony. The prosecution below relied on the letters appellant wrote on May 19, 2014 and June 3, 2014 to prove "procurement" and "inducement." No other evidence was adduced to

- 5 -

prove that element of Code § 18.2-436. However, for the letters to procure or induce perjury, they had to be communicated to the two witnesses, Johnson and Purnell. It is uncontroverted that the letters were intercepted at the jail. Further, the May 19, 2014 letter was addressed to "R. Savage," and there was no evidence establishing his or her identity or relation to the witnesses. Therefore, there is no causal connection between the letters and the two witnesses' alleged perjury. No evidence showed that appellant prevailed upon the witnesses to perjure themselves.

We conclude that the evidence failed to establish that appellant ever communicated to the two witnesses his "plan" for them to commit perjury. We therefore reverse appellant's two convictions under Code § 18.2-436 and enter final judgment.

## 2. Arson

Appellant maintains that the evidence was insufficient to convict him of arson because the prosecution did not prove "a fire ever was set." Appellant acknowledges that he did not preserve this argument at trial, but he asks that we apply the ends of justice exception to Rule 5A:18.[3] The exception "is a narrow one, which is to be used sparingly when an error at trial is clear, substantial and material." Merritt v. Commonwealth, 69 Va. App. 452, 459-60 (2018) (quoting Masika v. Commonwealth, 63 Va. App. 330, 333 (2014)). "[T]o bring an argument within the exception an appellant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221 (1997). Appellant must prove that he "was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 221-22.

---

[3] Rule 5A:18 provides in part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Appellant argued at trial that there was no evidence that the house referred to in appellant's letter was occupied and that the statute required that the building at issue be used as a dwelling. He did not argue that there was no proof that a fire was set.

Code § 18.2-77(A) states in part:

> If any person maliciously (i) burns, or by use of any explosive
> device or substance destroys, in whole or in part, or causes to be
> burned or destroyed, or (ii) aids, counsels or procures the burning
> or destruction of any dwelling house or manufactured home
> whether belonging to himself or another . . . he shall be guilty of a
> felony . . . .

Count three of appellant's indictment followed the language of Code § 18.2-77(A)(ii),

charging that he "did unlawfully and feloniously aid, counsel or procure another to maliciously

burn or, by the use of an explosive device or substance destroy . . . a dwelling house or

manufactured home, or other house in which persons usually dwell or lodge . . . ."

The ordinary meanings of the words "aid," "counsel," "procure," and "solicit" are

similar. To "aid" is to give assistance in an action; to "counsel" is to advise or recommend an

action; to "procure" is to prevail upon to do an action. See Webster's, supra, at 44, 518, 1809.

The definition of "solicit" includes "to move to action: serve as an urge or incentive to [act]:

incite." Id. at 2169. In the letter appellant wrote on May 27, 2014, he directed the intended

recipient of the letter to set fire to the residence of "rummy and dummy" after pouring gas on the

front and back of the house. Appellant also said to "[m]ake sure you get the gas in a milk jug[,]

that way that will burn too." An inference could be drawn from appellant's letter that he

intended to recommend, and sought to obtain, the burning of a residence and that he also gave

advice on how to commit the crime. However, the evidence established that the letter was

confiscated before it was mailed from the jail. Thus, without a letter being communicated to the

recipient, appellant could not aid, counsel, procure, or solicit any action by the recipient.

In determining whether to apply the ends of justice exception to Rule 5A:18, we consider

"(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the

ends of justice provision would result in a grave injustice." Williams v. Commonwealth, 294

Va. 25, 27-28 (2017) (quoting Commonwealth v. Bass, 292 Va. 19, 27 (2016)). We apply the

exception in this case because there is no proof that the letter was received by the intended recipient. The record "affirmatively show[s] that a miscarriage of justice has occurred" because "an element of the offense did not occur." Redman, 25 Va. App. at 221-22. We reverse appellant's conviction and enter final judgment.

3. Street gang predicate act of violence

Appellant contends that the evidence was insufficient to convict him of violating Code § 18.2-46.2 because the Commonwealth failed to prove a predicate act of violence. Acknowledging that he failed to preserve this issue below, he invokes the "ends of justice" exception to Rule 5A:18. As stated earlier, the exception "applies only in the extraordinary situation where a miscarriage of justice has occurred." Holt v. Commonwealth, 66 Va. App. 199, 209 (2016). To invoke the exception, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 210 (quoting Redman, 25 Va. App. at 221-22).

Appellant contends that because he was not convicted of a crime that is a predicate criminal act under Code § 18.2-46.2, he was convicted of a crime that does not exist. The Commonwealth concedes error and recommends the conviction be reversed.

> Such concessions embody the ethical duties expected of a legal advocate for the Commonwealth and are held in high esteem. Concessions of legal error, however, do not relieve the appellate court of its responsibility to perform its judicial function. While such concessions are entitled to great weight, they do not remove the Court's obligation to conduct its own review.

Joseph v. Commonwealth, 64 Va. App. 332, 336 n.2 (2015) (citations omitted).

Code § 18.2-46.2(A) provides in pertinent part:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.

Code § 18.2-46.1 defines "predicate criminal act" as "an act of violence." An "act of violence" is defined as "those felony offenses described in section A of § 19.2-297.1." Arson in violation of Code § 18.2-77 is an "act of violence" when the structure burned was occupied. Code § 19.2-297.1(A)(i)(g). A conspiracy to commit any of the violations enumerated in clause (A)(i) also constitutes an act of violence. See Code § 19.2-297.1(A)(ii). Solicitation of any enumerated offense does not serve as an act of violence, however.

The evidence here affirmatively showed that appellant was convicted of a non-offense. We thus apply the "ends of justice" exception to Rule 5A:18. We reverse appellant's conviction for participating in a street gang predicate offense and enter final judgment.

CONCLUSION

In sum, we reverse appellant's convictions for suborning perjury, "solicitation" of arson, and participating in a criminal street gang predicate act of violence, and enter final judgment.

Reversed and dismissed.